**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

**CIVIL ACTION NO. 25-60-DLB-EBA**

**FORD MOTOR COMPANY**                                                    **PLAINTIFF**

**v.**                                        <u>**MEMORANDUM ORDER**</u>

**PURE COUNTRY AUTOMOTIVE, LLC**
**d/b/a PURE COUNTRY FORD**                                          **DEFENDANT**

**\*\*\*  \*\*\*  \*\*\*  \*\*\***

## I.    INTRODUCTION

This matter is before the Court upon Defendant Pure Country Automotive, LLC's July 10, 2025 Motion to Dismiss.  (Doc. # 12).  Plaintiff Ford Motor Company having filed its Response (Doc. # 14), and Defendant having filed its Reply (Doc. # 15), the Motion is now ripe for the Court's review.  For the following reasons, Defendant's Motion to Dismiss is **denied**.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This case arises from an alleged breach of contract involving the unauthorized ownership transfer of a Ford dealership.  Plaintiff Ford Motor Company is a Delaware corporation with its principal place of business in Dearborn, Michigan and is a nationwide manufacturer and distributor of motor vehicles.  (Doc. # 1 ¶¶ 1, 12).  Ford runs its business by selling its vehicles and offering service on its vehicles at a number of authorized, independent franchised dealers.  (*Id*. ¶ 1).  For each of its franchised dealers, Ford enters into a Ford Sales and Service Agreement ("SSA"), which outlines the rights, obligations and responsibilities of both Ford and its respective dealerships.  (*Id*.).   The SSA

1

additionally specifies the persons and/or entities who Ford authorizes to own and control the dealerships. (*Id*.).

One such dealership is Pure Country Ford, located at 333 C.W. Stevens Boulevard in Grayson, Kentucky, and owned by Defendant Pure Country Automotive, LLC ("Pure Country"). (*Id*. ¶ 20). Pure Country Automotive is a Kentucky limited liability company with its principal place of business in Grayson, Kentucky. (*Id*. ¶ 13). At the time Plaintiff's Complaint was filed, Pure Country had two members—Jonathan Lett and Ray Braden. (*Id*. ¶ 15).

In March 2018, Ford and Pure Country entered into an SSA whereby Pure Country would own and operate a Ford dealership in Grayson. (*Id*. ¶ 3). At the time, Pure Country identified Edwin Lowman, Aaron Castro, and Jonathan Lett as its principal owners, with Lowman having sixty percent equity interest in the LLC, Castro having twenty percent interest, and Lett having twenty percent interest. (*Id*. ¶¶ 22–23). The SSA contained a provision giving Ford the right to execute an SSA with individuals and other entities "specifically selected and approved by [Ford]." (*Id*. ¶ 24). Additionally, the SSA stated that the rights and privileges under the contract "are not transferable, assignable or salable by [Pure Country] and no property right or interest . . . is sold, conveyed or transferred to [Pure Country]" under the agreement. (*Id*.). Three years later, Ford and Pure Country executed an amendment to the SSA that removed Aaron Castro as a principal owner and distributed his equity interest to Edwin Lowman. (*Id*. ¶¶ 25–26). Jonathan Lett retained his twenty percent interest, while Lowman held eighty percent interest. (*Id*. ¶ 27).

2

The crux of this action took place in 2023.  On February 2, 2023, Ford received an Asset Purchase Agreement between Pure Country and Ray Braden, which Ford rejected in writing on March 8, 2023.  (*Id*. ¶ 29–30).  Then, on October 31, 2023, Ford received an email from Jonathan Lett containing an unexecuted Membership Interest Purchase Agreement ("MIPA") showing the sale of Edwin Lowman's ownership shares to Ray Braden and Lett, effective and consummated as of August 7, 2023.  (*Id*. ¶¶ 31, 33).  Ford sent a letter to Pure Country in November, notifying the dealership that it rejected the ownership transfer "based upon the Capacity metric" of the proposed new owners.  (*Id*. ¶ 32).  Ford made multiple written objections to the new ownership over the next eighteen months, but Pure Country proceeded with the membership interest transfer.  (*Id*. ¶ 34–35).  On April 10, 2025, Pure Country notified Ford that the membership interest transfer was completed, and that "[Jonathan] Lett now owns fifty-one percent (51%) of [the Dealer Defendant] and Ray Braden acquired the remaining forty-nine percent (49%)."  (*Id*. ¶ 36).

Ford brought this action on June 3, 2025 (*Id*.), and Pure Country was served on June 9, 2025.  (Doc. # 9).  Pure Country filed its Motion to Dismiss on July 10, 2025, specifically requesting the Court to dismiss Count I of the Complaint.  (Doc. # 12).  Ford filed its Response on July 21, 2025 (Doc. # 14), and Pure Country filed its Reply on August 4, 2025.  (Doc. # 15).

## III.    ANALYSIS

### A.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint that fails to state a claim upon which relief can be granted.  In order to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state

a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is deemed facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A complaint is deemed to lack facial plausibility where "it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. This standard asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

In addressing a motion to dismiss under Rule 12(b)(6), a district court must accept the complaint's factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and only then determine whether those facts and inferences plausibly give rise to an entitlement to relief. *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020). "If it is at all plausible (beyond a wing and a prayer) that a plaintiff would succeed if he proved everything in his complaint, the case proceeds." *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018).

### B.   Declaratory Judgment

Pure Country does not seek to dismiss Ford's entire Complaint. Instead, it only seeks to dismiss Count I of the Complaint, in which Ford seeks a judgment from the Court declaring (a) that Pure Country breached its Contract with Ford, and (b) that the asset transfer contemplated in the MIPA was ineffective. (Doc. # 12 at 1; *see also* Doc. # 1). Pure Country contends that Count I is duplicative of Count II—Ford's breach of contract claim—and that adjudication of the breach of contract claim would resolve the dispute between the parties. (Doc. # 12 at 4). In response, Ford contends the relief it seeks with its declaratory judgment claim, namely declaring the MIPA a legal nullity under Kentucky

4

law, cannot be accorded through the resolution of the breach of contract claim. (Doc. # 14 at 1).

The Declaratory Judgment Act provides that district courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (quoting 28 U.S.C. § 2201). District courts have discretion on whether and when to entertain a declaratory judgment action. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).

District courts in the Sixth Circuit employ a five-factor test when determining whether to issue a declaratory judgment. Courts should look at (1) whether declaratory judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective. *Grand Trunk Western R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). No one factor garners more significant weight than another, and the inquiry should center around the ideas of efficiency, fairness, and federalism. *Western World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014).

Taking all the factors into account, the Court concludes Ford's declaratory judgment claim is not subject to dismissal, but rather, should be allowed to continue. The

Court principally looks to the first, second and fifth factors of the *Grand Trunk* analysis for its analysis.[1]

First, the Court's issuance of a declaratory judgment in Ford's favor would settle the controversy of whether Pure Country's transfer violates Kentucky law.  The Court's declaratory determination, for or against Ford, would dispose of that controversy.  Ruling solely on the breach of contract would not accord Ford the relief it seeks on that count. While that controversy is similar to whether Pure Country breached its contract with Ford, it is not the exact same and does not require the exact same findings.  Indeed, Ford seeks declaratory judgment relief in one claim and money damages in the other.  (Doc. # 1 at 8–9).  Additionally, courts in the Sixth Circuit have consistently held that actions with claims for money damages from a breach of contract and declaratory judgment are not mutually exclusive.  *See Hibbett Sporting Goods, Inc. v. ML Georgetown Paris, LLC*, No. 5:18-524-DCR, 2019 WL 475001, at *6 (E.D. Ky. Feb. 6, 2019) (exercising jurisdiction under the Declaratory Judgment Act because the plaintiff made a claim for monetary damages and declaratory judgment where the claims were "closely intertwined"); *see also Grizzly Processing, LLC v. Wausau Underwriters Ins. Co.*, No. 7:08-226-KKC, 2009 WL 4730205, at *3 (E.D. Ky. Dec. 4, 2009) (retaining jurisdiction over a declaratory judgment claim that was "closely intertwined" with a breach of contract claim).

Further, a declaratory judgment would help clarify the relations of the parties because it would help determine whether Lett and Braden are principal owners of Pure Country Ford or simply parties to a contract with Ford.  The distinction is subtle, yet important.  If, as Ford claims, the MIPA is invalid by law, Lett and Braden do not have

---

[1]    Plaintiffs have not alleged an action in Kentucky state court at this time.  As such, the Court views the third and fourth factors as neutral, with no bearing on the rest of its analysis.

their purported ownership stakes in Pure Country Ford and the ownership reverts to what Ford had previously agreed to in the 2021 Amendment. If the Court determines otherwise, Lett and Braden do have an ownership stake in the dealership, and the determination is then whether they owe Ford damages for their breach of the SSA. Therefore, this seemingly small distinction has tremendous implications.

Finally, for this case, there is no better or alternative remedy than declaratory judgment on the issue of the purchase agreement's legality. Pure Country maintains that money damages are the "better and more effective remedy." (Doc. # 15 at 3). However, as just discussed, the validity of the contract and damages from any breach are only part of the equation. If, as Plaintiffs plead, the agreement is void as a matter of law, there is no breach of the contract because the law would not recognize Lett and Braden as owners of the dealership in the first place. A declaratory judgment would entitle Ford to enforce its agreement and fully execute its rights to choose who runs its dealership, as the SSA bargains for. Thus, a claim for declaratory judgment would give Ford what it is actually seeking—its ability to fully enforce its contract—and is the best possible remedy at this juncture. Because the balance of factors weighs in Ford's favor, Defendant's Motion to Dismiss to Count I of Plaintiff's Complaint must be **denied**.

## IV.    CONCLUSION

Accordingly, for the reasons set forth herein, **IT IS ORDERED** that Defendant Pure Country Automotive's Motion to Dismiss (Doc. # 12) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant file its Answer to Plaintiff's Complaint no later than December 15, 2025.

This 1st day of December, 2025.



Signed By:

*David L. Bunning*

Chief United States District Judge

G:Judge-DLB\DATA\ORDERS\Ashland Civil\2025\25-60 MOO re MTD.docx