**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

**CIVIL ACTION NO. 25-60-DLB-EBA**

**FORD MOTOR COMPANY**                                                  **PLAINTIFF**


**v.**                          **MEMORANDUM OPINION AND ORDER**


**PURE COUNTRY AUTOMOTIVE, LLC**
**d/b/a PURE COUNTRY FORD**                                         **DEFENDANT**

**\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \***

## I.    INTRODUCTION

This matter is before the Court upon the Motion for Judgment on the Pleadings by Defendant Pure Country Automotive LLC (Doc. # 26).  Plaintiff Ford Motor Company having filed its Response in Opposition (Doc. # 27) and Defendant having filed its Reply (Doc. # 28), the Motion is ripe for the Court's review.  For the reasons set forth herein, Defendant's Motion is **denied**.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural history of this case has not changed much since this Court entered its December 1, 2025 Memorandum Order.  (*See* Doc. # 16).  Nevertheless, the Court provides the following summary of relevant facts necessary to adjudicate Defendant's Motion.

This case arises from an alleged breach of contract involving the unauthorized ownership transfer of a Ford dealership.  Plaintiff Ford Motor Company ("Ford") runs its business by selling its vehicles and offering service on its vehicles at a number of

1

authorized, independent franchised dealers.  (*Id*. ¶ 1).  For each of its franchised dealers, Ford enters into a Ford Sales and Service Agreement ("SSA"), which outlines the rights, obligations and responsibilities of both Ford and its respective dealerships.  (*Id*.).  The SSA additionally specifies the persons and/or entities who Ford authorizes to own and control the dealerships.  (*Id*.).

One such dealership is Pure Country Ford, owned by Defendant Pure Country Automotive, LLC ("Pure Country").  (*Id*. ¶ 20).  At the time Plaintiff's Complaint was filed, Pure Country had two members—Jonathan Lett and Ray Braden.  (*Id*. ¶ 15).  In March 2018, Ford and Pure Country entered into an SSA whereby Pure Country would own and operate a Ford dealership in Grayson.  (*Id*. ¶ 3).  At the time, Pure Country identified Edwin Lowman, Aaron Castro, and Jonathan Lett as its principal owners, with Lowman having sixty percent equity interest in the LLC, Castro having twenty percent interest, and Lett having twenty percent interest.  (*Id*. ¶¶ 22–23).  The SSA contained a provision giving Ford the right to execute an SSA with individuals and other entities "specifically selected and approved by [Ford]."  (*Id*. ¶ 24).  Additionally, the SSA stated that the rights and privileges under the contract "are not transferable, assignable or salable by [Pure Country] and no property right or interest . . . is sold, conveyed or transferred to [Pure Country]" under the agreement.  (*Id*.).  Three years later, Ford and Pure Country executed an amendment to the SSA that removed Aaron Castro as a principal owner and distributed his equity interest to Edwin Lowman.  (*Id*. ¶¶ 25–26).  Jonathan Lett retained his twenty percent interest, while Lowman held eighty percent interest.  (*Id*. ¶ 27).

On February 2, 2023, Ford received an Asset Purchase Agreement between Pure Country and Ray Braden, which Ford rejected in writing on March 8, 2023.  (*Id*. ¶ 29–30).

2

Then, on October 31, 2023, Ford received an email from Jonathan Lett containing an unexecuted Membership Interest Purchase Agreement ("MIPA") showing the sale of Edwin Lowman's ownership shares to Ray Braden and Lett, effective and consummated as of August 7, 2023.  (*Id*. ¶¶ 31, 33).  Ford sent a letter to Pure Country in November, notifying the dealership that it rejected the ownership transfer "based upon the Capacity metric" of the proposed new owners.  (*Id*. ¶ 32).  Ford made multiple written objections to the new ownership over the next eighteen months, but Pure Country proceeded with the membership interest transfer.  (*Id*. ¶ 34–35).  On April 10, 2025, Pure Country notified Ford that the membership interest transfer was completed, and that "[Jonathan] Lett now owns fifty-one percent (51%) of [the Dealer Defendant] and Ray Braden acquired the remaining forty-nine percent (49%)."  (*Id*. ¶ 36).

Ford brought this action on June 3, 2025 (*Id*.), and Pure Country was served on June 9, 2025.  (Doc. # 9).  Pure Country filed a Motion to Dismiss Count I of the Complaint on July 10, 2025, seeking to dismiss Ford's declaratory judgment claim as duplicative of its breach of contract claim.  (Doc. # 12).  After fully briefing the Motion, on December 1, 2025, this Court issued its Memorandum Order denying Pure Country's Motion to Dismiss, finding that Ford plausibly alleged a claim for declaratory judgment that was not duplicative of its breach of contract action.  (Doc. # 16 at 7).  The Court further ordered Pure Country to file its Answer to Ford's Complaint no later than December 15, 2025.  (*Id*.).  Sure enough, Pure Country filed its Answer to the Complaint timely on December 15, 2025.  (Doc. # 23).

3

Pure Country filed the instant Motion for Judgment on the Pleadings on January 26, 2026.  (Doc. # 26).  Ford filed its Response in Opposition (Doc. # 27), Pure Country filed its Reply (Doc. # 28), and the Motion is ripe for review.

### III.    ANALYSIS

#### A.    Standard of Review

Pure Country moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) and to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).  (Doc. # 26 at 4–5).  "A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)."  *Bates v. Green Farms Condominium Association*, 958 F.3d 470, 480 (6th Cir. 2020).  A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is deemed facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard asks for "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action.  *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  In addressing a motion under Rule 12, a district court must accept the complaint's factual allegations as true,

4

draw all reasonable inferences in the plaintiff's favor, and only then determine whether those facts and inferences plausibly give rise to an entitlement to relief. *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020). The court should grant a 12(c) motion "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (quoting *JPMorgan Chase Bank N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)).

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of an action for lack of subject matter jurisdiction. On a motion under Rule 12(b)(1), the plaintiff bears the burden of proving that the Court has subject matter jurisdiction. *RMI Titanium Co.*, 78 F.3d at 1135. Such motions can attack a complaint in two ways: facially and factually. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). A facial attack "merely questions the sufficiency of the pleading." *Id.* Thus, when reviewing a facial attack on a complaint, district courts "take[] the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss." *Id.* However, when a court reviews a factual attack on subject matter jurisdiction, there is no presumption of truthfulness. *Id.* Instead, if the facts presented "give rise to a factual controversy, the district court must . . . weigh the conflicting evidence" to determine if subject matter jurisdiction exists. *Id.* In its review of a factual attack, "a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Cartwright v. Garner*, 751 F.3d 752, 759-60 (6th Cir. 2014).

5

### B.    Failure to Exhaust Administrative Remedies

The first of Pure Country's three dismissal theories is that Ford failed to exhaust its administrative remedies under Kentucky Revised Statute § 190.045,[1] which requires automobile manufacturers and distributors to go through Kentucky's administrative processes before terminating a relationship with an automobile dealer.  (Doc. # 26 at 5–7).  Pure Country claims that since Ford's remedy for Pure Country's breach of contract is termination of the SSA, Ford was required to exhaust its administrative remedies before the Kentucky Motor Vehicle Commission ("the Commission") before bringing this lawsuit. (*Id*. at 7–8).  It claims, since Ford's best remedy is termination, the Commission is the only adjudicatory body that can hear Ford's claims.  (*Id*.).  Further, Pure Country alleges that Ford is "attempting to deprive Pure Country of its rights under the Franchise Act" by circumventing the administrative process.  (*Id*. at 9).

This argument by Pure Country is based on the incorrect premise that Ford is seeking to terminate the SSA.  In truth, Ford is not seeking to terminate the SSA, and a review of its Complaint reveals as much.  Indeed, Ford does allege that breach of the SSA "grants Ford the right to terminate" to the SSA, but nowhere in the Complaint does Ford indicate it is planning to invoke that right.  (Doc. # 1 ¶ 2).  A review of Count II of the Complaint, where Ford alleges breach of contract, reveals Ford has no intention of terminating the SSA or its relationship with Pure Country.  (*See id*. at ¶¶ 52–60).  Even further, Ford makes clear at several points in its Response in Opposition that it is not seeking to terminate the SSA.  (*See* Doc. # 27 at 8–12).  Accordingly, since Ford is "the master of [its] complaint and may choose the remedies [it] wishes to request[,]" it need

---

[1]    This section of Kentucky's code is the Commonwealth's regulatory response to the Automobile Dealer's Day in Court Act, 15 U.S.C. § 1221 *et seq*.

not request termination of the SSA if it does not want to terminate the SSA. *Innovation Ventures LLC v. Custom Nutrition Lab'ys LLC*, 912 F.3d 316, 331 (6th Cir. 2018).

Since Ford is clearly not seeking termination of the SSA, the Commission does not maintain exclusive jurisdiction, like Pure Country claims. In fact, Kentucky law provides that parties may seek other forms of relief—i.e. declaratory judgment—for actions relating to the relationships between dealers and distributors without having to exhaust administrative procedures. *See* KY. REV. STAT. § 190.058(15). This is exactly what Ford did by seeking declaratory judgment in this Court. Accordingly, the Court will reject Pure Country's exhaustion argument.

### C.   Adequacy of Remedies at Law

Next, Pure Country states that the Complaint should be dismissed because Ford has an adequate remedy at law in its ability to terminate the SSA. It claims that "termination would be the superior remedy as it would completely dispose of any ownership issues." (Doc. # 26 at 10). It further states that declaratory judgment is no longer warranted based on an analysis of the *Grand Trunk* factors, and it requests the Court conduct a second *Grand Trunk* analysis based on the information produced in its pleadings. (*Id*. at 11). The information it produced includes a December 2, 2025 protest that Pure Country filed with the Commission regarding its ownership transfer, Ford's motion to stay the administrative matter pending the outcome of this case, and a lengthy discussion of the history of the Automobile Dealer's Day in Court Act and its progeny. (*Id*. at 2–4; Doc. # 28-2 at 1–6, 28–33).

Having reviewed the new evidence Pure Country submitted, the Court finds that conducting a second *Grand Trunk* analysis is not necessary. The reason is simple—a

declaratory judgment is *still* the best possible remedy and, more importantly, Ford's sought remedy at this point in the case. Ford still desires the ability to enforce the SSA as it initially bargained for, and termination of the SSA does not allow Ford to do that. (*See* Doc. # 27 at 8 ("Here, Ford has chosen not to seek termination, and instead seeks a declaratory judgment that the ownership transfer was illegal . . . .")). Further, Pure Country's newly hatched arguments on the *Grand Trunk* factors are not persuasive. The Court does not see how the Commission's ruling on Pure Country's protest—filed well after this case was initiated and relating to an entirely separate dealership ownership transaction than the one at issue—would at all impact this matter. (Doc. # 28 at 4). And while the Court recognizes the importance of eliminating friction between federal courts and state administrative agencies, the likelihood of that happening in this case is low, given that the respective courts are analyzing two different transactions. (*Id*.). Accordingly, there is no reason for the Court to reconsider its previous decision. *See American Civil Liberties Union of Ky. V. McCreary Co., Ky.,* 607 F.3d 439, 450 (6th Cir. 2010) ("A court may grant a motion to alter or amend judgment only if there was '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'") (internal citations omitted).

### D.    Lack of Subject Matter Jurisdiction

Finally, Pure Country seeks to dismiss Ford's Complaint based on lack of subject matter jurisdiction. Specifically, Pure Country alleges that Ford did not properly allege that the amount in controversy exceeds the $75,000 threshold required for diversity jurisdiction. (Doc. # 26 at 12).

The Court will deny this claim as well.  When a defendant seeks dismissal of a plaintiff's pleading based on the amount in controversy, "the case will not be dismissed unless it appears that the plaintiff's assertion of the amount in controversy was made in bad faith."  *Schultz v. Gen. R.V. Ctr.*, 512 F.3d 754, 756 (6th Cir. 2008) (quoting *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 157 (6th Cir. 1993)).  "A showing of bad faith is made if the defendant demonstrates 'to a legal certainty[ ] that the original claim was really for less than the amount-in-controversy requirement.'"  *Id*.

Pure Country cannot show Ford acted in bad faith in asserting its damages award.  Its allegations hinge on the lack of an exact number in Ford's Complaint and its theory that termination is the best possible remedy.  (Doc. # 26 at 13).  Neither of these theories prove to a legal certainty that the original claim by Ford was really for less than $75,000.  And a review of the Complaint reveals the opposite.  Indeed, in reviewing Ford's Complaint, it avers that Pure Country Ford is worth over $1,000,000.  (Doc. # 1 ¶ 14).  This case focuses on a transfer of eighty percent of the ownership stake of Pure Country Ford, which would total at least $800,000, well over $75,000.  (*Id*. ¶¶ 5–6).  As such, the Court finds that Pure Country has not met its burden of proving bad faith in pleading the amount in controversy.  *See EQT Gathering, LLC v. Webb*, No. CIV. 13-132-ART, 2014 WL 1577055, at *3 (E.D. Ky. Apr. 17, 2014) ("Generalized claims that the asserted amount in controversy is unverified or unproven are not enough to show 'to a legal certainty' that the value of relief is below the jurisdictional amount.").

## IV.   CONCLUSION

Thus, for the reasons stated herein, **IT IS ORDERED** that Defendant Pure Country Automotive's Motion for Judgment on the Pleadings (Doc. # 26) is **DENIED**.

This 31st day of July, 2026.



Signed By:

David L. Bunning

Chief United States District Judge

G:Judge-DLB\DATA\ORDERS\Ashland Civil\2025\25-60 MOO re MJOP.docx